UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-21787-CIV-MORENO/GOODMAN

LOURDES RODRIGUEZ,

       Plaintiff,

v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

      This case challenges a denial of social security benefits. Plaintiff Lourdes Rodriguez ("Rodriguez") and Defendant Kilolo Kijakazi[1], Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 18; 21]. The Commissioner's summary judgment motion also served as her opposition response to Rodriguez's motion. [ECF No. 22]. Rodriguez filed a response to the Commissioner's motion which was also her reply. [ECF No. 23]. The Commissioner did not file an optional reply.

      According to the Clerk's directive in these types of administrative appeals, all

---

[1]    Plaintiff's initial suit was brought against Andrew Saul, the Commissioner at the time of filing. Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi should be substituted for Andrew Saul as the suit's Defendant.

dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Rodriguez's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter a final judgment in favor of the Commissioner.

## I.      Procedural Background

On September 18, 2019, Rodriguez applied for disability insurance benefits and supplemental security income, alleging a disability with an amended onset date of April 19, 2019. (R. 16, 205, 360-71).[2] Rodriguez alleges disability due to depression, anxiety attacks, and memory loss. (R. 395). The Commissioner denied the application initially and on reconsideration. (R. 217-225, 226-234, 237-249, 250-262). After a hearing on December 1, 2020 (R. 197-216), Administrative Law Judge Jerry M. Lang (the "ALJ") concluded that Rodriguez was not disabled. (R. 16-26). The Appeals Council denied review of the ALJ's decision. (R. 1-6). The Commissioner's final decision is now subject to review.

## II.     Factual Background

Rodriguez was 56 years old on the amended alleged onset date of April 19, 2019. (R. 24, 205, 360, 370). Rodriguez has a ninth-grade education. (R. 207). She worked as a cashier, fast food worker, and cleaner. (R. 24, 207-208, 211). At the time of the hearing,

---

[2]      Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 16].

Rodriguez was renting a room in an apartment with one of her sons, but had experienced intermittent periods of homelessness. (R. 203-04). She did not cook, had no appetite, and had trouble sleeping. (R. 209-10). Rodriguez reported staying in bed all day and speaking only to her son. (R. 211). She experienced "horrible anxiety attacks" and difficulty following television programs because her "brain just gets foggy." (R. 210).

## III.   Applicable Legal Standards

### A.   Standard of Review

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1.  **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2.  **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3.  **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine the claimant's residual functional capacity ("RFC"); and then determine:

4.  **Step four**. Based on the RFC, can the claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or past relevant work, then an ALJ must finally determine:

5.  **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports the ALJ's findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted).

The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

## IV.    The ALJ's Findings

In denying Rodriguez's claim for benefits, the ALJ followed the sequential five-step evaluation process for social-security claims. (R. 16-26). At step one, the ALJ

concluded that Rodriguez had not engaged in substantial gainful activity since April 19, 2019, the alleged amended onset date. (R. 18).

At step two, the ALJ concluded that Rodriguez had the following severe impairments: hyperlipidemia, mood disorder, and anxiety disorder. *Id.*

At step three, the ALJ concluded that Rodriguez did not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19-20). Next, the ALJ determined that Rodriguez has the RFC to

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can occasionally climb ramps and stairs, ladders and ropes; and no hazards. The claimant is restricted to work only requiring simple, routine, repetitive tasks (3 step, Reasoning Level 2); no more than 2 hours concentration without a break; only occasional contact with coworkers, supervisors, or the public; and infrequent changes that are gradually introduced.

(R. 20).

At step four, the ALJ concluded that Rodriguez had past relevant work as a cashier, fast food worker, and cleaner. (R. 24).

Lastly, at step five, the ALJ found that there are jobs existing in significant numbers in the national economy that Rodriguez can perform, including commercial cleaner, laborer stores, and hand packager. (R. 24-25). Accordingly, the ALJ found that Rodriguez has not been under a disability from June 1, 2017,[3] through the date of the ALJ's decision

---

[3]     The original alleged onset date was June 1, 2017.

(December 23, 2020). (R. 25-26).

## V.      Analysis

Rodriguez raises two arguments in support of reversal. [ECF No. 18]. First, she argues that the Social Security Administration's ("SSA") unconstitutional structure "deprived [her] of a valid administrative adjudicatory process." *Id.* at 6. Second, there was no meaningful judicial review in this case because critical portions of the hearing transcript were "inaudible." *Id.* at 8.

For the reasons discussed below, the Court should reject Rodriguez's arguments.

### A.      *Even if the Structure of the Social Security Administration was Unconstitutional, Rodriguez is Not Entitled to Relief*

Rodriguez argues that the case should be remanded for a *de novo* hearing before a new ALJ due to the unconstitutionality of the SSA's structure. Rodriguez focuses on two Supreme Court cases she contends support her position: *Selia Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020) and *Carr v. Saul*, 141 S. Ct. 1352 (2021). However, these cases offer little more than establishing the unconstitutionality of the SSA's removal provision and that Rodriguez is permitted to raise the issue as a basis for remand. Neither decision offers insight as to whether remand is appropriate in Rodriguez's specific situation.

In *Selia Law LLC*, the Supreme Court held "that the [Consumer Financial Protection Bureau's ("CFPB")] leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers." 140 S. Ct. at 2192. Rodriguez

argues that the SSA's structure suffers from the same constitutional defect as the CFPB because "[t]he Commissioner of [the] SSA is the singular head of the Agency, serves for six years, and cannot be removed by the President except for cause ('neglect of duty or malfeasance in office')." [ECF No. 18, p. 6 (citing 42 U.S.C. § 902(a)(3)]. This claim is not in dispute, as the Commissioner "agree[s] that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." [ECF No. 21, p. 3 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021)].

In *Carr*, the Supreme Court held that a claimant need not raise a constitutional challenge at the agency level to bring it before the district court on appeal -- i.e., there is no issue exhaustion requirement, and the Commissioner may not rely on forfeiture to defeat a constitutional claim. 141 S. Ct. at 1362. Again, the Commissioner does not dispute this principle.

Instead, the Commissioner cites to *Collins v. Yellen*, which she claims establishes the principle that "even where an unconstitutional statutory removal restriction is present, a plaintiff cannot obtain retrospective relief **without showing that the 'unconstitutional provision . . . inflict[ed] compensable harm**.'" [ECF No. 21, pp. 4-5 (citing 141 S. Ct. 1761, 1789 (2021) (emphasis added; alteration in response))]. According to the Commissioner, Rodriguez is not entitled to relief because she has not made any

showing that the removal restriction caused her compensable harm. *Id.* at 5, 7-11.

The Commissioner also relies on additional legal doctrines, including "harmless error, *de facto* officer, and the rule of necessity, as well as broad prudential considerations" as reinforcement for her position that *Collins* requires this Court to reject Rodriguez's request for relief. *Id.* at 4, 11-14.

The Court should rule in favor of the Commissioner on this issue. Neither party disputes whether the SSA's removal provision is unconstitutional or whether Rodriguez has standing to bring her claim, which leaves the issue of whether Rodriguez must show that the "unconstitutional provision . . . inflict[ed] compensable harm." *Collins*, 141 S. Ct. 1789. However, Rodriguez does not address *Collins* (or the necessity of establishing compensable harm) in her response to the Commissioner's summary judgment motion. [ECF No. 23]. "When a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims." *Johns v. CSX Transp., Inc.*, 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016).

Even if Rodriguez did not abandon the argument by failing to address the compensable harm issue, other Courts have denied similar arguments based on the claimant's inability to show compensable harm. *See, e.g.*, *Dixon v. Kijakazi*, No. 20-82316-CIV, 2022 WL 2908497, at *13 (S.D. Fla. May 26, 2022), report and recommendation adopted, No. 20-CV-82316-RS, 2022 WL 2904549 (S.D. Fla. July 22, 2022) (rejecting

argument because "the ALJ who rendered the unfavorable decision in question had been re-appointed by the Acting Commissioner" and "[the] [p]laintiff . . . provided no evidence or argument whatsoever about a compensable harm against him, other than the fact that his claim was denied, stemming from the removal provision of 42 U.S.C. § 902(a)(3)"); *Vergara v. Kijakazi*, No. 20-22964-CIV, 2022 WL 769704, at *8 (S.D. Fla. Feb. 23, 2022), report and recommendation adopted sub nom. *Vergara v. Comm'r of Soc. Sec.*, No. 20-22964-CIV, 2022 WL 767125, (S.D. Fla. Mar. 14, 2022) ("[B]ecause [the] [p]laintiff fails to show that she suffered compensable harm as a result of the removal restrictions of § 902(a)(3), her motion for summary judgment on the basis of separation of powers should be [d]enied on its merits."); *Ragusa v. Kijakazi*, No. 21-CV-80235, 2022 WL 1479405, at *7 (S.D. Fla. Feb. 15, 2022), report and recommendation adopted, No. 21-80235-CIV, 2022 WL 1012898 (S.D. Fla. Apr. 5, 2022) (finding claimant was not entitled to relief on this ground where he "ha[d] neither shown a nexus between the removal restrictions and his claim, nor ha[d] he plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused him compensable harm").

At bottom, Rodriguez fails to establish a causal link between the removal provision at issue and the ALJ's unfavorable decision. She has made no effort to identify with particularity any error in her hearing that is attributable to some action or decision taken by Saul. Nor has she presented any evidence, if she were able to establish error (which she has not), that the error was allowed to occur only because the President was

improperly unable to remove Saul because of the unconstitutional removal restriction.[4]

For these reasons, the Undersigned respectfully recommends that the District Court deny Rodriguez's request for relief on this ground.

**B.**     ***The Inaudible Portions of the Hearing Transcript Do Not Preclude Meaningful Judicial Review***

Next, Rodriguez argues that "the inaudible portions of the hearing transcript, especially those appearing during the ALJ's positing of his only hypothetical question [to the VE], preclude meaningful judicial review and prejudice[d] [her] due process rights." [ECF No. 18, p. 11].

Rodriguez notes that "[t]hroughout the hearing transcript provided by the Commissioner in the certified administrative record, there are thirty-four (34) instances where statements made variously by the ALJ, [Rodriguez]'s representative, [Rodriguez], [the] Spanish interpreter, and [the] VE were deemed 'INAUDIBLE' by the transcriber." *Id.* at 8 (citing R. 199-05; 208-09; 211-15)]. She observes that "there is no way to determine how much of what was said at the hearing was deemed 'INAUDIBLE' – the notation in the transcript could represent a single word just as easily as it could represent an entire phrase or whole sentences." *Id.* at 9. She further notes that "[t]he first and second Spanish

---

[4]     Because Rodriguez has failed to establish that she is entitled to relief under *Collins*, the Undersigned declines to address the Commissioner's other arguments (i.e., the ALJ's appointment by an Acting Commissioner, harmless error, *de facto* officer doctrine, rule of necessity, and broad prudential considerations) made in support of a ruling denying Rodriguez's summary judgment motion.

interpreters on the line were lost" and "there are at least nine statements indicating the audio quality was poor." *Id.* at 8.

Plaintiff contends that "[t]his shortcoming . . . is particularly critical as it relates to the single hypothetical question the ALJ posited to the VE, especially since that hypothetical and the VE's responses to it were the bases upon which the ALJ's RFC and steps four and five findings were made." *Id.* at 9. According to Rodriguez "there are material differences between the written transcript and the ALJ's RFC finding, such that it cannot be said for certain that [the ALJ's] RFC finding is an accurate and exact reflection of the hypothetical question he posited to the VE" and there is no way to know "whether the VE took into consideration all of the limitations posited by the ALJ when it appears there were at least two instances [the VE] indicates the audio 'cut out.'" *Id.*; *see* discussion, *infra.*

Rodriguez also cites to the Social Security Administration Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-4-1-15(B), noting that although "the HALLEX cannot itself serve as the basis for remand, the Eleventh Circuit has held that in cases where an agency's violation of its own governing rules results in prejudice, remand to the agency for compliance is warranted." *Id.* at 11 (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. Unit A Sept. 1981) (per curiam)).[5] According to Rodriguez, the SSA "blatantly

---

[5]    *Hall* was decided on Sept. 9, 1981. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

ignored its obligation to follow its own procedure regarding inaudible transcripts and [Rodriguez] is prejudiced because the agency has neither remanded this case, nor has it explained why defense of the case is not precluded." *Id.* at 11-12.

The Commissioner argues that Rodriguez is not entitled to relief because she "fails to show any clear prejudice based on any error as required to obtain a remand[.]" [ECF No. 21, p. 16 (citing *Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991))].

To be sure, the ALJ has a duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Austin v. Astrue*, No. 5:07CV52/MCR/EMT, 2008 WL 2385520, at *17 (N.D. Fla. June 9, 2008) ("It goes without saying that the ALJ has a duty to ensure that an adequate record of the hearing is obtained, so that a transcript can be produced and meaningful review by this court can occur.").

However, remand is not warranted in every instance where there are gaps in the record. "A plaintiff must show that the lack of a record and the consequential loss of testimonies created an evidentiary gap, resulting in unfairness or clear prejudice." *Fricks v. Colvin*, No. 4:12-CV-02026-LSC, 2013 WL 3152277, at *4 (N.D. Ala. June 17, 2013) (citing *Edwards*, 937 F.2d at 586). "[C]laimants alleging that inaudible portions of a transcript merit remand [must]. . . show that [they are] prejudiced by the omissions in the transcript or that the omissions are so significant that they prevent fair judicial review." *Wanda S. v. Saul*, No. 1:20-CV-1914-MHC-JKL, 2021 WL 7708545, at *2 (N.D. Ga. Aug. 2, 2021).

In other words,

> [t]he ALJ's failure to fulfill his duty to fully develop the record . . . **only necessitates a remand if "the record reveals evidentiary gaps which result in unfairness or clear prejudice."** *Brown*, 44 F.3d at 935 (quotations omitted). . . . **"[T]here must be a showing of prejudice before [the Court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record."** *Id.* Prejudice requires a showing that "the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

*Mosley v. Acting Com'r of Soc. Sec. Admin.*, 633 F. App'x 739, 742 (11th Cir. 2015) (emphasis added).

In *Wanda S.*, for instance, the district court determined that, although there were fifty-three omissions in the hearing transcript, "the vast majority appear[ed] to be short, and the hearing transcript as a whole [could] still be understood in context" and "many of the inaudible portions of the transcript also [could] be understood from the ALJ's opinion." 2021 WL 7708545, at *3. The court therefore concluded that remand was not merited "[b]ecause [the] [p]laintiff ha[d] not identified any prejudice arising from the inaudible portions of the transcript and because they [were] not so prevalent that they preclude[d] judicial review." *Id.* at *4.

Similarly, in *Ballasso v. Astrue*, the court noted that "[s]ome of the hypothetical that resulted in denial of benefits [was] not in [the] record because the audiotape was inaudible in two places, but there [was] enough to show that the ALJ gave a hypothetical of an individual who could only do light exertional tasks of a simple and routine nature,

13

avoiding hazards, and with a sit or stand option." No. 5:07CV239-SPM/WCS, 2008 WL 3540272, at *8 (N.D. Fla. Aug. 12, 2008). The court ultimately affirmed the Commissioner's decision. *Id.* at *10.

On the other hand, in *Brown v. Kijakazi*, the court determined that it "[could not] conduct meaningful review for substantial evidence" where "[t]he entire vocational expert's testimony [was] missing from the transcript, and there [was] no duplicative record evidence to support the ALJ's finding." No. 3:20-CV-75-KHJ-JCG, 2021 WL 3855622, at *3 (S.D. Miss. Aug. 27, 2021).

Here, the inaudible portions of the administrative hearing transcript have not caused prejudice to Rodriguez or precluded meaningful judicial review. Rodriguez identifies 34 instances where the hearing transcript was marked inaudible and nine instances where the hearing participants made statements which were indicative of poor audio quality. However, many of these portions of the transcript were clarified by surrounding testimony or by repeating the statement. Additionally, some of the inaudible portions relate to purely administrative matters (as opposed to the substance of the ALJ's determinations), such as making sure the Spanish interpreter was on the line.

Thus, notwithstanding the gaps in the hearing transcript, many portions of the transcript are not material to Plaintiff's assertion of prejudice. Rodriguez does not specifically contend, for instance, that the ALJ failed to consider some of her subjective testimony or that the technical difficulties with the Spanish interpreter(s) affected the

ALJ's decision. Rodriguez has identified only *one* area of inaudible testimony that was

consequential or critical to the ALJ's decision: the VE's testimony.

During the administrative hearing in this case, the ALJ posed the following

hypothetical to the VE:

> Q       So, Dr. Younger, please consider a hypothetical individual who has
> the claimant's age, education, and past relevant work. **This [INAUDIBLE]**
> **perform medium work, although the medium work should only involve**
> **occasional ramps and stairs, as well as [INAUDIBLE] on occasion. But no**
> **hazards --**
>
> A       Hey, you cut out, Judge. You said occasional ramps and stairs, as
> well as and then you cut out.
>
> Q       **Scaffolds, [INAUDIBLE] to only simple, routine, repetitive task so**
> **that up to three steps and reasoning [IANUDIBLE] [sic].** No more than
> two hours of concentration without a break. Only occasional contact with
> coworkers, supervisors, or the public. **And work that involves only in**
> **[INAUDIBLE] are gradually introduced when they do occur**. Are there
> jobs in the local and national economy this hypothetical individual could
> perform?
>
> **A       Judge, you -- last thing you said infrequent and then you cut out**
> **again.**
>
> **Q       Infrequent changes that have gradually [sic] introduced**.
>
> A       Okay. Yes, it would be some jobs in that category, Your Honor.
> [INAUDIBLE] One second please. One job would be a commercial cleaner.
> My there's something going on today, 'cause it's like my computer just it's
> giving me fits. One second. I'm sorry about this, this is incredible.
>
> Q       And I assume the past relevant work is ruled out?
>
> A       Well, the past relevant work -- yeah, because the cashier, it's due to
> your –

Q        Occasional contact with the public.

A        -- that last statement you had. Yeah, yeah, that's what it's doing with that. With that, you couldn't do that with that job. Okay, tjust [sic] my paper, thank you. Okay, so commercial cleaner, we have the commercial cleaner has a code of 381. 687-018. Medium, skill level of two. 982,240; 9-8-2-2-4-0. Another one would be a laborer stores. 922.687-058, medium, skill level of two. 80,582; 8-0-5-8-2. And a hand packer, 920.687-142, medium, skill level 2. 161,099; that's 1-6-1-0-9-9. That's a sample.

Q        What is the DOT code on hand packager?

A        920.687-142.

Q        Okay, is your testimony consistent with the DOT?

A        Yes, there areas the DOT doesn't cover, such as dealing with coworkers, supervisors. That question is based on my education, experience, training.

Q        And the [INAUDIBLE] you described in the national [INAUDIBLE] make up several regions, I suppose?

A        Yes, the national economy numbers I gave you.

Q.        Okay.

(R. 212-14 (emphasis added)).

The ALJ made the following RFC finding in his Decision:

After careful consideration of the entire record, the undersigned finds that [Rodriguez] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [Rodriguez] **can occasionally climb ramps and stairs, ladders and ropes; and no hazards**. **The claimant is restricted to work only requiring simple, routine, repetitive tasks (3 step, Reasoning Level 2)**; no more than 2 hours concentration without a break; only occasional contact with coworkers, supervisors, or the public; and infrequent changes that are gradually introduced.

(R. 20 (emphasis added)).

In support of her argument that "there are material differences between the written transcript and the ALJ's RFC finding," [ECF No. 18, p. 9], Rodriguez provides three examples: (1) "the actual reasoning level described by the ALJ during the hearing appears as 'reasoning [INAUDIBLE]' in the hearing transcript, whereas in the ALJ's RFC finding it appears as 'Reasoning Level 2'"; (2) "the hearing transcript shows the ALJ included a limitation as to '[s]caffolds,' but it is unclear from the transcript what the actual degree of limitation was meant to be due to the apparent poor audio quality" and "the word '[s]caffolds' never once appears in the ALJ's RFC finding";[6] (3) "the ALJ does not appear to pick up where the transcript leaves off with him describing limitations regarding 'hazards,' nor does it specify which hazards." *Id.* at 10 (citing R. 212-13).

With respect to Rodriguez's first example, concerning the reasoning level, the Commissioner argues that Rodriguez cannot show prejudice. The Commissioner notes that "Plaintiff does not allege that the ALJ's RFC finding [(limited to Reasoning Level 2)] is unsupported by substantial evidence, and she does not allege that a person limited to Reasoning Level 2 work is unable to perform the Reasoning Level 2 jobs or Reasoning

---

[6] Rodriguez suggests that "[i]f a limitation to '[s]caffolds,' whatever it may have been, was excluded, it begs the question of what other limitations may have been inadvertently excluded or gone unheard." [ECF No. 18, p. 10]. However, the VE did not ask for further clarification on that portion of the hypothetical, and her answer suggests that she understood the hypothetical. (R. 212-13).

Level 1 job the VE and ALJ identified as ones she could perform, abandoning the issue." [ECF No. 21, p. 19]. Thus, the Commissioner argues, even if the ALJ had left out the reasoning level out of the hypothetical completely (which the Commissioner does not argue he did), the error would be harmless because the jobs identified by the VE are "within the parameters of Reasoning Level 2." *Id.*

Rodriguez responds that:

the Commissioner's argument fails to appreciate the actual problem here. That is, **not only is the actual Reasoning Level inaudible, but "INAUDIBLE" appears between the word "reasoning" and a period indicating the end of the sentence. What else might have been said between "reasoning" and the period at the end?** For it to be "reasoning level 2," it would have to have been at least two words, but it could have been more words relating to the other General Education Development ("GED") requirements or anything else for that matter. The only thing that's clear here is that we'll never know exactly what is missing from the ALJ's hypothetical question to the VE.

[ECF No. 23, p. 5 (emphasis added)].

In response to the second example, the Commissioner acknowledges that "Plaintiff is correct that the RFC does not include a limitation to scaffolds." [ECF No. 21, p. 17 (citing ECF No. 18, p. 10)]. Nonetheless, the Commissioner argues that because "[Rodriguez] does not argue that the RFC that excludes the limitation is unsupported by substantial evidence, [she is] abandoning any argument on the issue. *Id.* Moreover, the Commissioner notes that "Plaintiff fails to show that an ALJ asking about a limitation means the ALJ must then include it in the RFC finding." *Id.* Lastly, the Commissioner argues that any error in excluding this limitation from the RFC was harmless because

"[t]he Dictionary of Occupational Titles (DOT) entry for each of the jobs the ALJ identified as ones Plaintiff could perform shows the job does not require climbing or only requires occasional climbing, which is consistent with the hypothetical for occasional scaffolds." *Id.* at 17-18.

In her response, Rodriguez does not directly address the Commissioner's point that the exclusion of a scaffolds' limitation in the RFC, at best, constitutes harmless error. Instead, she states, "[i]f a limitation to '[s]caffolds,' whatever it may have been, was excluded, it begs the question of what other limitations may have been inadvertently excluded or gone unheard." [ECF No. 23, p. 5].

Finally, concerning Rodriguez's third example, the Commissioner maintains that "it does not appear there was additional testimony in that regard, and neither Plaintiff nor the VE indicated any confusion about what the ALJ meant by hazards." [ECF No. 21, p. 18 (citing R. 212)]. The Commissioner further notes that "Plaintiff does not identify any hazard in the DOT descriptions for the jobs the ALJ identified that would conflict with the RFC limitation" and for this reason "Plaintiff fails to show harmful error even if she showed an error." *Id.*

Again, Rodriguez does not address the Commissioner's point about there being no harmful error. Instead, she focuses on the technical difficulties in the transcript:

> [s]imilarly, the hearing transcript indicates the VE did not hear what the ALJ said after the phrase "ramps and stairs, as well as," the transcript noting this portion was both "[INAUDIBLE]" and that the VE described the ALJ as having "cut out," but even after advising the ALJ that she could not

hear the last portion of what he stated, the ALJ does not appear to pick up where the transcript leaves off with him describing limitations regarding "hazards," nor does it specify which hazards ([R]. 212).

[ECF No. 23, p. 5].

Rodriguez argues that the Court should remand this case because there is no way to truly know the parameters of the ALJ's hypothetical to the VE:

> **The Commissioner's arguments relating to these points raised by Rodriguez fail to appreciate the actual problem here. That is, the only thing that's clear here is that we'll never know exactly what is missing from the ALJ's hypothetical question to the VE**. Here, "INAUDIBLE" could represent several seconds, or admittedly less likely yet possible, several minutes of missing audio from the recording. Nonetheless, **the point is that neither Rodriguez nor the Commissioner knows what is missing**, and the Commissioner's insistence that this [C]ourt assume the "INAUDIBLE" portions of the transcript are of no import in the outcome of this case deprives the claimant of her fundamental right to know on what base(s) her disability claim was denied and whether the ALJ's decision is based on substantial evidence.

*Id.* at 6-7 (emphasis added).

Plaintiff argues that the instant case is like *Saunders v. Astrue*, No. 506-CV-452-OC-10GRJ, 2008 WL 821939, at *1 (M.D. Fla. Mar. 26, 2008). [ECF No. 21, p. 6]. In *Saunders*, the district court determined that "the ALJ's finding that [the] [p]laintiff could return to her past relevant work [was] flawed and require[d] . . . remand[]." *Id.* at *9. Specifically, the district court noted that the ALJ's finding "[did] not contain any analysis or discussion but only the ALJ's bare conclusion." *Id.*

The court noted that "this finding [was] flawed because the ALJ did not include any mention or discussion in his decision of the physical and mental demands of

Plaintiff's past jobs . . . other than referring to the opinion of the VE" and "[b]ecause the ALJ concluded that [the] [p]laintiff could perform her past relevant work as she actually performed it[,] the ALJ was required to discuss how the [p]laintiff's RFC was consistent with the physical and mental demands of her past relevant work." *Id.*

The court stated, in the alternative, that:

> even assuming that it was proper for the ALJ not to include in his decision any discussion of the physical or mental demands of [the] [p]laintiff's past relevant work–and instead simply recite that he was relying upon the opinion of the VE–the decision [was] still due to be remanded because **the [c]ourt [was] unable to make any meaningful review of the testimony offered by the VE due to the fact that much of it is noted in the transcript as "inaudible."**

*Id.* (emphasis added).

The court further noted that:

> **the portions of the testimony of the VE that [were] transcribed, and [were] not noted as "inaudible," [did] not evidence what the VE assumed were the physical and mental demands of [the] [p]laintiff's past relevant work because the ALJ did not pose hypothetical questions to the VE which included all of [the] [p]laintiff's RFC or elicit[ed] testimony from the VE that addressed the physical and mental demands of [the] [p]laintiff's past relevant work**. The only hypothetical posed to the VE was to assume that the past jobs were sedentary–without any mention of the physical or mental requirements of those jobs. . . . [W]hile the transcript [did] contain testimony from the [p]laintiff about what she did as an assembler and as an office worker (and presumably the VE heard this testimony) **the [c]ourt [was] unable to discern what the ALJ or the VE concluded were the physical and mental demands necessary to perform [the] [p]laintiff's past relevant work** as either an assembler or as an office clerk. **This omission [was] important because it [was] assumed that the VE's opinion that the [p]laintiff could perform the demands of her past relevant work [was] based upon a comparison of [the] [p]laintiff's RFC with the physical and mental demands of the jobs [the] [p]laintiff actually performed**.

*Id.* at *10 (emphasis added).

The *Saunders* court also noted that the ALJ failed to resolve an inherent conflict

concerning the limitation on stooping:

> **The ALJ's error in failing to evaluate the physical and demands [sic] of past relevant work is underscored by reference to [the] [p]laintiff's limitation on stooping**. [The] [p]laintiff reported that stooping was a requirement of her work as an assembler and as an office clerk. The ALJ, on the other hand, found that [the] [p]laintiff's RFC included the restriction that [the] [p]laintiff could not "stoop." **Despite the obvious conflict between the fact that [the] [p]laintiff said she was required to stoop in her past jobs and the ALJ's conclusion that she could not stoop, the VE opined that [the] [p]laintiff could perform her past relevant jobs as she actually performed them** and **the ALJ adopted this opinion wholesale without any discussion as to whether stooping was a requirement of [the] [p]laintiff's past relevant work or, if so, how [the] [p]laintiff could perform a job that required stooping if she was unable to do so**. Because the transcript of the testimony by the VE is silent, and there is no discussion by the VE in his decision, as to whether the ALJ or the VE considered stooping as a requirement of [the] [p]laintiff's jobs as an assembler or as an office worker the [c]ourt [was] unable to make meaningful review of the ALJ's finding that [the] [p]laintiff could perform her past relevant work as she actually performed it.

*Id.* at *10 (emphasis added; citation to the record omitted).

Finally, the district court noted that the ALJ's decision incorrectly recited the VE's

opinion:

> This flaw in the ALJ's finding that [the] [p]laintiff [could] perform her past relevant work [was] compounded by the fact that **the ALJ incorrectly recited in his decision that the VE opined that–in addition to finding [the] [p]laintiff could return to her past relevant work as an assembler and office worker as she performed this work–[the] [p]laintiff could return to her past work as it is generally performed in the national economy**. The transcript of the testimony by the VE [did] not reflect, however, that the VE

opined [the] [p]laintiff could perform the jobs of assembler or office clerk as generally performed in the national economy. The only testimony in the transcript that could be construed as addressing the issue of past relevant work as generally performed in the national economy was a question by the ALJ regarding the job of administrative assistant in the insurance industry.

*Id.* at *10 (emphasis added; citation to the record and footnote omitted).

The *Saunders* court also noted the conflict between the classification of the plaintiffs' past jobs as "sedentary" and the DOT's classification of these jobs as "light work":

the jobs of assembler and office clerk are not listed as sedentary and unskilled in the Dictionary of Occupational Titles (the DOT), but rather are both listed as light work. **The classification of these jobs in the DOT is completely at odds with the ALJ's further statement in his decision that "[T]he vocational expert further stated that his testimony was consistent with the information provided in the Dictionary of Occupational Titles and in the Selected Characteristics of Occupations**."

*Id.* (alteration in original) (emphasis added; footnote omitted). The court faulted the ALJ for "fail[ing] to resolve this conflict as required, or for that matter [failing to] even recognize that there was a direct conflict between the VE's conclusion that [the] [p]laintiff could return to past relevant work at a sedentary RFC and the DOT classification that the work was classified as light work." *Id.* at *11.

The only similarity between *Saunders* and the instant case is that both cases involve inaudible portions of the VE's testimony. In other words, it was not only that portions of the VE's testimony were inaudible in *Saunders*, it was also that there were inherent inconsistencies in the ALJ's decision concerning the plaintiff's ability to perform past

relevant work which warranted remand. In fact, the inaudible portions of the transcript were not, by themselves, dispositive in *Saunders*, as the court made clear that:

> a simple, concise explanation by the ALJ in his decision as to why the evidence establishe[d] that [the] [p]laintiff could perform the physical and mental demands of her past relevant work **may have obviated the need for a new hearing**. Because the ALJ, however, did not take the time to do that in this case, the Court has no choice but to remand this case for further proceedings so that the ALJ can address the physical and mental demands of [the] [p]laintiff's past relevant work, as she actually performed those jobs, and whether given [the] [p]laintiff's sedentary RFC, [the] [p]laintiff can perform one or more of these past relevant jobs.

*Id.* at *11 (emphasis added; footnote omitted).

To obtain a remand on this ground, Rodriguez must show that the omissions in the hearing transcript caused her prejudice "or that the omissions are so significant that they prevent fair judicial review." *Wanda S.*, 2021 WL 7708545, at *2. Rodriguez has not made either showing.

Rodriguez does not identify any specific errors or inherent contradictions in the ALJ's decision. And she does not address the Commissioner's assertions of harmless error.

Instead, she chooses to focus on the inaudible portions of the colloquy between the ALJ and the VE. But much of the inaudible portions can be understood through context or the ALJ repeating himself. Additionally, the hearing transcript reflects that Rodriguez "was represented by her attorney, Rogelio R. Oliver" during the administrative hearing before the ALJ. (R. 199). Mr. Oliver sat through the ALJ's colloquy with the VE, the

transcript does not reflect that he had any issues or raised any concerns about being able to hear (and understand) the ALJ's hypothetical to the VE, and he was able to cross-examine the VE.

In *Van Leis v. Astrue*, for instance, the court noted that the plaintiff's consultant was able to hear the VE's testimony since the consultant was able to cross-examine the VE:

> Significantly, the plaintiff was represented at the hearing by a social security consultant who cross-examined the expert. The plaintiff's representative at the hearing apparently understood the expert's opinion regarding the meat trimming job, as he did not ask the expert to clarify that testimony, or pose any other questions concerning that job. Therefore, the plaintiff failed to carry his burden of showing that he is unable to perform his prior work as a meat trimmer.

No. 8:11-CV-2634-T-TGW, 2013 WL 239131, at *10 (M.D. Fla. Jan. 22, 2013) (citation to the record omitted).

Thus, Rodriguez has not shown that the inaudible portions of the hearing transcript prevent meaningful judicial review. *See Gipson v. Colvin*, No. CV 14-00536-B, 2016 WL 1183149, at *9 (S.D. Ala. Mar. 28, 2016) (finding hearing transcript was adequate to permit judicial review where "the passages referenced by [the] [p]laintiff contain[ed] some missing words but [were] still capable of reasonable interpretation and [did] not demonstrate unfairness or prejudice to the [p]laintiff"); *Ford v. Astrue*, No. 307-CV-835-J-TEM, 2009 WL 789895, at *6 (M.D. Fla. Mar. 23, 2009) ("[I]naudible sections [of the hearing transcript] [did] not present such evidentiary gaps as would possibly change the outcome" and "[the] [p]laintiff was represented by counsel at both hearings, and had the

opportunity to raise [the] issue at the second hearing, but chose not to do so."); *Ballasso*, 2008 WL 3540272, at *8 ("Some of the hypothetical that resulted in denial of benefits [was] not in [the] record because the audiotape was inaudible in two places, but there [was] enough to show that the ALJ gave a hypothetical of an individual who could only do light exertional tasks of a simple and routine nature, avoiding hazards, and with a sit or stand option.").

In sum, the record as a whole is not so incomplete or inadequate to prevent meaningful judicial review and the inaudible portions of the administrative hearing transcript do not warrant a remand. Although portions of the colloquy between the ALJ and the VE were denoted as inaudible, the VE did ask the ALJ to repeat himself and the VE's answers suggest that she was able to hear and understand the hypothetical. Thus, despite some technical difficulties, Rodriguez received a full and fair hearing before the ALJ.

Additionally, Rodriguez is not entitled to remand based on any alleged violations of the HALLEX. "Although the Eleventh Circuit has not issued a definitive decision on the matter, it has indicated in several unpublished decisions that the HALLEX does not create judicially enforceable rights, particularly where a plaintiff fails to establish prejudice." *Mitchell v. Saul*, No. 8:18-CV-1587-T-CPT, 2019 WL 13066869, at *3 (M.D. Fla. July 18, 2019) (footnote omitted) (citing *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016); *Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x. 889, 892 (11th Cir.

2011); and *George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009)). "[V]iolations of [the] HALLEX cannot serve as grounds for remand in and of themselves . . . . The issue is whether these violations prejudiced [the] [p]laintiff such that the Commissioner violated her due process rights." *Clance v. Comm'r of Soc. Sec.*, No. 8:20-CV-557-T-SPF, 2021 WL 4129556, at *5 (M.D. Fla. Sept. 10, 2021).

For the reasons discussed above, Rodriguez has not shown that her due process rights have been violated.

At bottom, notwithstanding the inaudible portions of the hearing transcript, when considered as a whole, the VE's testimony constitutes substantial evidence supporting the ALJ's determination that "considering [Rodriguez]'s age, education, work experience, and residual functional capacity, [Rodriguez] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 25).

## VI.    Conclusion

The Undersigned **respectfully recommends** that the District Court **deny** Rodriguez's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter final judgment in favor of the Commissioner.

## VII.   Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the

District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on August 19, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All counsel of record

28